UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-80180-CIV-RYSKAMP/VITUNAC

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

NATIONWIDE CONNECTIONS, INC.,
*et al.*,
Defendants.

## BSG DEFENDANTS' MOTION FOR SANCTIONS DUE TO PLAINTIFF FTC'S SPOLIATION OF EVIDENCE

Defendants Billing Concepts, Inc. ("BCI"), ACI Billing Services, Inc., d/b/a OAN and BSG Clearing Solutions North America, LLC (collectively, "BSG"), respectfully move the Court for sanctions against Plaintiff Federal Trade Commission ("FTC") for the intentional spoliation of evidence by its rebuttal expert witness, Ralph Summerford.

During the September 28, 2007 deposition of Mr. Summerford, the FTC's rebuttal expert witness in this case, Mr. Summerford admitted that he and other members of his firm who assisted in the preparation of his expert report systematically destroyed all of the notes they had used in preparing his expert witness report, that before destroying those notes Mr. Summerford advised the FTC of his intention to destroy them, and that the FTC did not instruct him to preserve those notes. Inexplicably, the FTC allowed Mr. Summerford to destroy all of his notes even though these notes were responsive to BSG's Second Set of Requests for Production, which were served on the FTC on May 11, 2007, more than a month before the FTC retained Mr.

Summerford. Even more troubling, the FTC allowed this document destruction to occur notwithstanding the fact that the FTC has previously taken the position in this case that the notes of BSG's experts are subject to mandatory production under Fed. R. Civ. P. 26(a)(2).[1]

The fact that the FTC allowed Mr. Summerford to destroy documents called for by BSG's document request, and which the FTC itself has asserted were subject to the mandatory disclosure provisions of Rule 26, is inexcusable. By allowing its expert to destroy these notes, the FTC has severely prejudiced BSG in its ability to cross-examine Mr. Summerford on the substance of his opinions as well as his credibility. Accordingly, the FTC should be sanctioned for allowing the blatant destruction of discoverable documents by Mr. Summerford, and Mr. Summford's testimony should be excluded. At a minimum, BSG is entitled to have adverse inferences drawn regarding the substantive testimony and credibility of Mr. Summerford due to his intentional destruction of evidence.

## STATEMENT OF FACTS

On September 28, 2007, BSG took the deposition of Ralph Summerford, who the FTC had previously identified as its rebuttal expert witness.[2] During that deposition, Mr. Summerford was asked a number of questions by counsel for BSG regarding the materials he had utilized in preparing his expert report, including any notes that he created. Mr. Summerford begrudgingly acknowledged at his deposition that he had destroyed all of his notes.

> Q: Were there notes you did not maintain?
> A: Yes.
> Q: What did you do with those notes?
> A: I didn't keep them.

---

[1] Unlike Mr. Summerford, BSG's experts retained their notes and those notes were produced to the FTC.
[2] The FTC did not designate any initial expert witnesses to support its claim. It only designated a rebuttal expert.

> Q: So you got rid of them?
>
> A: Yeah. I didn't need them, so I didn't keep them.

(Summerford Dep. Tran., 43 (Ex. A).) He also admitted that others at his firm who worked on this matter had systematically destroyed all of their notes. Id. at 66-67 (Ex. A). Mr. Summerford further admitted that he expressly advised the FTC of his intention to destroy his notes and that the FTC did not tell him to retain those notes. Id. at 44-45 (Ex. A). Indeed, Mr. Summerford testified that he advised the FTC that it was his normal practice to destroy the paper trail of his notes once his report was prepared. Id. at 44. Instead of advising Mr. Summerford to preserve this evidence, the FTC stood by silently while Mr. Summerford destroyed those critical documents.

The FTC allowed Mr. Summerford to destroy his notes even though, on May 11, 2007, more than a month before the FTC retained Mr. Summerford, BSG served the FTC with BSG's Second Set of Requests for Production. In those requests, BSG sought the following documents:

> Request No. 72
> Please produce all documents that discuss, describe, refer to or evidence any communications between the Plaintiff and anyone designated as an expert by the FTC.
>
> Request No. 73
> Please produce all documents that discuss, describe, refer to or evidence any opinion offered by any person designated as an expert by the FTC.
>
> Request No. 74
> Please produce all documents relied on or reviewed by any expert identified by the FTC in forming that expert's opinion.

(Def. BSG's Second Set of Reqs. for Produc., 9-10 (Ex. B).) Mr. Summerford admitted during his deposition that his notes contained his thought processes about his opinions and information relating to his expert report as well as information that Mr. Summerford decided not to include in

his report. (Summerford Dep. Tran., 47–48 (Ex. A).) Mr. Summerford also conceded that the notes may have reflected communications that he had with the FTC. Id. at 69–70 (Ex. A).

Moreover, in letters dated July 23 and August 8, 2007, the FTC took the position that notes created by BSG's expert witnesses constituted information considered by the experts in preparing their expert report and, therefore, were subject to the mandatory disclosure requirements under Fed. R. Civ. P. 26(a)(2)(B). (Letter from Collot Guerard, FTC to Andrew G. Berg, King & Spalding (July 23, 2007), 1–2; Letter from Collot Guerard, FTC to Kevin Dinan, King & Spalding (August 8, 2007), 2 (Ex. C).) Yet while taking that position as to BSG's experts, the FTC acquiesced in the destruction of these discoverable documents by Mr. Summerford and his staff.[3]

## ARGUMENT

I. **The FTC and Ralph Q. Summerford Had A Duty To Preserve The Notes Mr. Summerford Used in Formulating His Opinions And Preparing His Expert Report**

The FTC had a duty to inform Mr. Summerford that he and his staff were required to preserve all of the notes they created in connection with his opinions and expert report. The FTC cannot deny that fact. Indeed, while Mr. Summerford and his staff were destroying their notes, the FTC was asserting in letters to counsel for BSG that the notes of BSG's experts constituted discoverable information under Fed. R. Civ. P. 26(a)(2)(B).

---

[3] In its July 23 and August 8 letters, the FTC also took the position that all drafts of expert reports were subject to production under Fed. R. Civ. P. 26(c)(2)(B). (Letter from Collot Guerard, FTC to Andrew G. Berg, King & Spalding (July 23, 2007), 1; Letter from Collot Guerard, FTC to Kevin Dinan, King & Spalding (August 8, 2007), 1 (Ex. C)). However, at Mr. Summerford's deposition, BSG learned that the FTC and Mr. Summerford had avoided the creation of draft reports by using a program called "WebEx," which allowed him to make changes on his computer while discussing real-time with the FTC regarding what changes they wanted made. (Summerford Dep. Tran. 70-72) (Ex. A).

4

In *W.R. Grace & Co.-Conn. V. Zotos Intern., Inc.*, 2000 WL 1843258, *6 (W.D.N.Y. 2000), a case which the FTC highlighted in its August 8, 2007 letter to counsel for BSG, the court held that an expert's personal notes to himself that he consulted during the formulation of his opinions and report are certainly within the ambit of those items "considered" by an expert for purposes of Rule 26(a)(2)(B) mandatory disclosure, especially when their contents are "directed to an issue . . . expected to arise in connection with [an expert's] deposition testimony regarding the conclusions stated in his report." *Id.* at *12. Such notes are "relevant to [the expert's] formulation of his opinions for the purposes of discovery, and should be discovered." *Id.* The word "considered" was added as part of the 1993 Amendments to Rule 26, and was changed in order to broaden the scope of materials required of experts. *See, e.g., Karn v. Ingersoll Rand*, 168 F.R.D. 633 (D. Ind. 1996) ("The drafters of the new Rule clearly contemplated that the term 'considered' was something different than the term 'relied,' given that they rejected an earlier draft version of subdivision (a)(2), which required that the expert's report set forth 'the data or other information relied upon in forming such opinions' . . . 'Considered,' which simply means 'to take into account,' clearly invokes a broader spectrum of thought than the phrase 'relied upon,' which requires dependence on the information.") (internal citations and quotations omitted); *see also Baxter Diagnostics, Inc. v. AVL Scientific Corp.*, 1993 U.S. Dist. LEXIS 11798 (D. Cal. 1993).

Mr. Summerford admitted at his deposition that his notes were among the items that he considered in formulating his opinions and his reports. Indeed, Mr. Summerford testified that:

> My notes would contain my thought processes of what I might put in a report, what I might not put in a report. When I decide that I'm going to put something in a report, I check it off and I put it in the report. If I decide that I'm not going to put it in the report, I check it off that I'm not going to put it in the report. When I'm finished with those notes, I discard the notes. I do not keep the notes. That is my custom and practice.

(Summerford Dep. Tran., 47 (Ex. A).)

Mr. Summerford's custom and practice is no excuse for violating his discovery obligations and destroying evidence. It is well-settled that a standing policy of routine document destruction does not relieve an expert of his duty to maintain his preparatory materials. A "document-retention policy cannot trump Rule 26(a)(2)(B). The rule does not require merely that the party disclose data that it happens to have retained; it must disclose all the data that an expert that it retained to testify at trial 'considered,' implying that it must retain those data, as otherwise it could not disclose them." *Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 751 (7th Cir. 2005); *see also Trigon Ins. Co. v. U.S.*, 204 F.R.D. 277, 289 (E.D. Va. 2001) ("execution of a document retention policy that is at odds with the rules governing the conduct of litigation does not protect the United States from a finding of intentional destruction.").

Moreover, Mr. Summerford's notes were responsive to BSG's requests for production, which alone put both Mr. Summerford and the FTC on notice that they were to be preserved. *See, e.g., Hansen v. Dean Witter Reynolds, Inc.*, 887 F. Supp. 669, 675 (D.N.Y. 1995) ("Many Rule 37(b) cases involve the alleged spoliation of evidence that had been demanded in discovery. Whether or not a party had notice of the evidence's relevance is not at issue in those cases because once a discovery request has been made, the party possessing the evidence, by definition, has notice of its relevance.").

> II.  **Mr. Summerford's Document Destruction Was Intentional Destruction of Evidence And His Testimony Should Be Excluded.**

Spoliation is the "destruction" of evidence or the "significant and meaningful alteration of a document or instrument." *Fla. Evergreen Foliage v. E.I. du Pont de Nemours & Co.*, 165 F. Supp. 2d 1345, 1359 (D. Fla. 2001). Spoliation of evidence "disrupts the judicial process and

inhibits the truth-seeking functions of a court." *Flowers v. Wal-Mart Stores, Inc.*, 2005 U.S. Dist. LEXIS 25578 (D. Ga. 2005). Therefore, based on a court's inherent power to control the process of litigation, a court has the power to impose spoliation sanctions. *Id.* Federal law governs the imposition of spoliation sanctions. *Martinez v. Brink's, Inc.*, 171 Fed. Appx. 263 (11th Cir. 2006); *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005); *Cont'l Cas. Co. v. Compass Bank*, 2006 U.S. Dist. LEXIS 12288 (D. Ala. 2006); *Flowers*, 2005 U.S. Dist. LEXIS at *9. In the Eleventh Circuit, there are six elements of a spoliation claim: "(1) the existence of a potential civil action; (2) a legal or contractual duty to preserve evidence which is relevant to the potential civil action; (3) destruction of that evidence; (4) significant impairment in the ability to prove the lawsuit; (5) a causal relationship between the evidence destruction and the inability to prove the lawsuit; and (6) damages." *Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003).

By allowing Mr. Summerford and his staff to destroy their notes, the FTC has allowed the spoliation of evidence that could have been used to cross-examine Mr. Summerford on the substance of his opinions and to test his credibility. Mr. Summerford and the FTC had a duty to preserve his firm's notes under the mandatory retention and disclosure policies set forth in Rule 26. Indeed, in its July 23 and August 8, 2007 letters, the FTC asserted that BSG's expert's were obligated to produce their notes pursuant to Fed. R. Civ. P. 26(a)(2)(B). Moreover, these critical documents were specifically requested by BSG in its Second Set of Requests for Production that was served upon the FTC on May 11, 2007, more than a month before the FTC engaged the services of Mr. Summerford, which requested, among other things, all documents that discussed, described, referred to, or evidenced any communications between Mr. Summerford and the FTC, and any opinion offered by Mr. Summerford, as well as all documents Mr. Summerford

reviewed or relied upon in forming his opinions. (Def. BSG's Second Set of Reqs. for Produc., Request Nos. 73-75, 9–10 (Ex. B).) Based upon the testimony of Mr. Summerford, there is no question that his notes were responsive to these requests. The notes contained the "thought processes" of what Mr. Summerford might put in his reports. (Summerford Dep. Tran., 47 (Ex. A).) Mr. Summerford also acknowledged that his notes may have contained "any kind of information." Id. at 48. The FTC, therefore, clearly had notice that these materials needed to be retained, and Mr. Summerford's notes should have been retained and produced to BSG, not only pursuant to Fed. R. Civ. P. 26(a)(2)(B), but also in response to BSG's document requests.

In a case with strikingly similar facts, the United States District Court for the Eastern District of Virginia held the Government responsible for the intentional spoliation of materials created by its experts. *Trigon*, 204 F.R.D. 277. In *Trigon*, the Government failed to tell its testifying experts that they were required to retain the materials used in the preparation of their reports. The court held that the United States and its experts, due to the well-known disclosure requirements of Rule 26, "were on notice that the materials were to be preserved so that they could be disclosed at the appropriate time." *Id.* at 288. Furthermore, as in the present case, the United States had been served with requests for production that specifically sought the very documents that were eventually destroyed by the experts. (Def. BSG's Second Set of Reqs. for Produc., 9–10 (Ex. B)); *Trigon*, 204 F.R.D. at 280. The *Trigon* court held the Government was responsible for its expert's document destruction, declaring that "the United States took no steps to preserve evidence that it knew, or was charged with knowing, must be disclosed. Its failure to discharge its known duty is sufficient to support a finding of intentional destruction under the circumstances." *Trigon*, 204 F.R.D. at 289.

The court in *Trigon* recognized that "[t]he ability meaningfully to cross-examine experts is important because their reliability is essential to the adversary system." *Id.* The court further noted that documents used by the expert in preparing the report are invaluable, because they "show in a way no other evidence can, the evolution of the expert's opinions and the influences upon them." *Id.* at 290. Accordingly, the court in *Trigon* held that Trigon "[had] been substantially prejudiced in its ability to cross-examine [the expert] as to both the substance of his report and as to potential issue of expert independence." *Id.*

As in *Trigon*, the FTC knew, or should have known, that Mr. Summerford was required to keep all of his preparatory materials and its failure to do so was, as the court found in *Trigon*, tantamount to "intentional destruction under the circumstances." *Id.* at 289. As in *Trigon*, BSG has been substantially prejudiced by the intentional destruction of Mr. Summerford's and his staff's notes. Without those notes, BSG has been completely deprived of evidence reflecting the evolution of those opinions, a result that was clearly intended by Mr. Summerford, as he advised the FTC and testified at his deposition that it is his normal practice to destroy all notes once he prepares his reports. (Summerford Dep. Tran., 43, 44, 47 (Ex. A).)

Given the FTC's and Mr. Summerford's blatant disregard for their obligations under Fed. R. Civ. P. 26(a)(2)(B), and the FTC's failure to preserve crucial evidence responsive to BSG's document requests, the FTC should be precluded from offering the testimony of Mr. Summerford. Indeed, in *Trigon*, the Court held that "preclusion might well have been an appropriate sanction for the conduct [that occurred]," *Trigon*, 204 F.R.D. at 291, conduct strikingly similar to the conduct of the FTC and its expert in this case. The Court in *Trigon* did not prohibit the testimony of the expert because through remedial efforts, significant portions of the spoliated evidence were recovered. *Id.* That is not the case here. The FTC and Mr.

Summerford have succeeded in eliminating any paper trail of notes that show how Mr. Summerford and his staff reached his opinions. The FTC and Mr. Summerford also destroyed the only evidence that would show what influence or directive the FTC exercised concerning his opinions. That evidence is forever gone and BSG will be substantially prejudiced in its ability to cross-examine Mr. Summerford.

The FTC should be sanctioned for its egregious conduct. An appropriate sanction should "serve the threefold purposes of deterring parties from engaging in spoliation, placing the risk of an erroneous judgment on the party who wrongfully created the risk, and restoring the prejudiced party to the position it would have been in had the misconduct not occurred." *Gordon Partners, et al. v. Blumenthal (In re NTL, Inc. Sec. Litig.)*, 2007 U.S. Dist. LEXIS 6198 (D.N.Y. 2007). Courts have held that sanctions are appropriate for the destruction of documents relevant to the litigation. *Capellupo v. FMC Corp.*, 126 F.R.D. 545 (D. Minn. 1989) (stating that "sanctions are appropriately levied against a party responsible for causing prejudice when the party knew or should have known that the destroyed documents were relevant to pending or potential litigation"); *Wm. T. Thompson Co. v. General Nutrition Corp.*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984) (recognizing that "sanctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information"). The appropriate sanction in this case is that the FTC should be precluded from offering the testimony of Mr. Summerford.[4]

---

[4] Other courts have also held that exclusion of an expert witness' testimony is an appropriate sanction for spoliation of evidence. *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 266 (8th Cir. 1993) (holding the appropriate sanction was the exclusion of the plaintiff's expert testimony and an adverse inference where the plaintiff's expert and the plaintiff's attorney "knew or should have known" that a piece of evidence was "an important piece of evidence which should have been preserved in its entirety"); *see also Perez-Velasco v. Suzuki Motor Co.*, 266 F. Supp. 2d 266, 269 (D.P.R. 2003); *Headley v. Chrysler Motor Corp.*, 141 F.R.D. 362, 365 (D. Mass.

10

### III. At a Minimum, BSG is Entitled to Have Adverse Inferences Drawn Concerning the Substantive Testimony And Credibility of Mr. Summerford

While the appropriate sanctions in this case should be the exclusion of Mr. Summerford's testimony, if that sanction is not imposed, an adverse inference should be drawn against the offending party, the FTC. *See, e.g., Four Seasons Hotels & Resorts B.V. v. Consorcio Barr, S.A.*, 267 F. Supp. 2d 1268, 1324 (D. Fla. 2003). In the Eleventh Circuit, "an adverse inference is drawn from a party's failure to preserve evidence" when the failure to preserve that evidence "is predicated on bad faith." *Bashir v. AMTRAK*, 119 F.3d 929, 931 (11th Cir. 1997). There is no question that the intentional destruction of Mr. Sumerford's notes constituted bad faith.

As a result of its spoliation of critical evidence, BSG is entitled to have adverse inferences drawn. As Mr. Summerford conceded at his deposition, the road-map for his expert opinions and his expert report was contained in these notes. As he testified, "[m]y notes would contain my thought processes of what I might put in a report, what I might not put in a report." (Summerford Dep. Tran., 47 (Ex. A).) However, Mr. Summerford did not want BSG to have that road-map. This is why he routinely destroyed his notes. Neither did the FTC, which allowed him to destroy his notes. That destruction of evidence will severely hinder BSG's ability to cross-examine Mr. Summerford. As the court did in *Trigon*, 204 F.R.D. at 291, this Court should draw adverse inferences regarding the substantive testimony and credibility of Mr. Summerford.

---

1991). Exclusion of expert witness testimony has also been used as a sanction for other discovery abuses. *See, e.g., Cruikshank v. Olsen*, 1990 U.S. App. LEXIS 19293 (9th Cir. 1990); *Potter v. Phillips*, 2004 U.S. Dist. LEXIS 27460 (D.N.Y. 2004); *Jefferson v. Davis*, 131 F.R.D. 522, 528 (D. Ill. 1990); *Schmidt v. Ford Motor Co.*, 112 F.R.D. 216 (D. Colo. 1986).

## CONCLUSION

For the foregoing reasons, BSG's Motion for Sanctions Due To Spoliation of Evidence should be granted, and the testimony of Mr. Summerford should be excluded. At a minimum, this Court should draw adverse inferences regarding the substantive testimony and credibility of Mr. Summerford because of his intentional destruction of critical evidence, destruction that the FTC allowed to occur.

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1.A.3, counsel for the BSG Defendants has conferred with counsel for the FTC by telephone regarding the subject matter of this motion in a good faith effort to resolve the issues raised herein. The subjects that BSG has presented in this Motion for Sanctions are those which counsel for BSG and the FTC were unable to resolve.

Dated: October 17, 2007.

Respectfully submitted,

**McDERMOTT WILL & EMERY LLP**

By:        /s/ Michael G. Austin
Steven E. Siff (FBN 352330)
E-mail: *ssiff@mwe.com*
Michael G. Austin (FBN 0457205)
E-mail: *maustin@mwe.com*
201 S. Biscayne Blvd., Ste. 2200
Miami, Florida 33131
Tel: (305) 358-3500; Fax: (305) 347-6500

*Co-Counsel:*
**KING & SPALDING LLP**
Andrew G. Berg, Esq.
E-mail: *aberg@kslaw.com*
Pro hac vice
Kevin M. Dinan, Esq.
E-mail: *kdinan@kslaw.com*
Pro hac vice
Joshua D. Pollack, Esq.

*E-mail: jpollack@kslaw.com*
Pro hac vice
1700 Pennsylvania Ave., NW
Washington, D.C. 20006
Tel: (202) 626-2919; Fax: (202) 626-3737

*Attorneys for Defendants Billing Concepts, Inc., ACI Billing Services, Inc., d/b/a OAN and BSG Clearing Solutions North America, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 17, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

/s/ Michael G. Austin
Andrew G. Berg/Kevin M. Dinan/
Joshua D. Pollack
*Attorneys for Defendants Billing Concepts, Inc., ACI Billing Services, Inc., d/b/a OAN and BSG Clearing Solutions North America, LLC*

SERVICE LIST
Case No. 06-80180-CIV-RYSKAMP/VITUNAC

### Via Electronic Mail

Laura M. Kim, Esq.
lkim@ftc.gov
Collot Guerard, Esq.
Cguerard@ftc.gov
Richard McKewen
rmckewen@ftc.gov
Robert Schoshinski
rschoshinski@ftc.gov
Federal Trade Commission
600 Pennsylvania Avenue, N.W., Room 288
Washington, DC  20580
Telephone:  202-362-3734
Facsimile:  202/326-3395
*Attorneys for the Federal Trade Commission*

Jeffrey Schneider, Esq.
JCS@tewlaw.com
Michelle Visiedo-Hidalgo, Esq.
mtv@tewlaw.com
Patrick Joseph Rengstl
pjr@tewlaw.com
Tew Cardenas LLP
Four Seasons Tower, 15th Floor
1441 Brickell Avenue
Miami, FL  33131-3407
Telephone:  305-539-2481
Facsimile:  305-536-1116
*Attorneys for Receiver David R. Chase*

Mark D. Johnson, Esq.
markdjohnsonpa@bellsouth.net
10 Central Parkway, Suite 210
Stuart, FL 34994
Telephone: 772-223-7700
Facsimile: 772-223-1177
*Attorney for Defendants & Cross-Claim Defendants Yaret Garcia, Qaadir Kaid, and Erika Riaboukha*

Thomas G. Long, Esq.
jhicks@barnettbolt.com
Hildegund P. Wanders, Esq.
jhicks@barnettbolt.com
Barnett, Bolt, Kirkwood, Long
601 Bayshore Blvd., Suite 700
Tampa, FL 33606
Telephone: 813-253-2020
Facsimile: 813-251-6711
*Attorneys for BMW Financial Services*

Richard Gordin, Esq.
rgordin@tighepatton.com
Neal Goldfarb, Esq.
ngoldfarb@tighepatton.com
Max Maccoby
mmaccoby@tighepatton.com
Tighe Patton Armstrong Teasdale, PLLC
1747 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: 202-565-2881
Facsimile: 202-454-2805
*Attorneys for Defendant The Billing Resource, d/b/a Integretel*

Michael Woodbury, Esq.
Michael.woodbury@woodbury-santiago.com
Woodbury & Santiago, P.A.
Two Datran Center - Penthouse 1A
9130 South Dadeland Boulevard
Miami, FL 33156
Telephone: 305-669-9570
Facsimile: 305-669-8616
*Attorney for Grunspan Trust, et al.*

Jerry M. Markowitz, Esq.
jmarkowitz@mdrtlaw.com
Two Datran Center, Suite 1225
9130 South Dadeland Boulevard
Miami, FL 33156
Telephone: 305-670-5000
Facsimile: 305-670-5011
*Attorneys for First Churchill Way, LLC*

Gary M. Dunkel, Esq.
dunkelg@gtlaw.com
Jason Henry Okleshen
okleshenj@gtlaw.com
Greenburg Traurig
777 S. Flagler Drive, Suite 300E
West Palm Beach, FL 33401
Telephone: 561-650-7900
Facsimile: 561-655-6222
*Attorney for BHD/WEB, LLC*

Martin John Alexander
marty.alexander@hklaw.com
Scott B. Newman, Esq.
scott.newman@hklaw.com
Holland & Knight
222 Lakeview Avenue
Suite 1000
West Palm Beach, FL 33401
Telephone: 561-650-8036
Facsimile: 561-650-8399
*Attorneys for Defendant The Billing Resource, d/b/a Integretel*

Chad A. Dean, Esq.
chad@schuylaw.com
118 W. Adams Street, #800
Jacksonville, FL 32202
Telephone: 904-353-5884
Facsimile: 904-353-5994
*Attorney for Primus Automotive Financial Services and Ford Motor Credit Co.*

Michael G. Austin, Esq.
maustin@mwe.com
Steven E. Siff, Esq.
ssiff@mwe.com
McDermott Will & Emery LLP
201 S. Biscayne Boulevard
Suite 2200
Miami, FL 33131-4336
Telephone: 305-347-6511
Facsimile: 305-347-6500
*Attorneys for Defendants Billing Concepts, Inc., ACI Billing Services, Inc., d/b/a OAN and BSG Clearing Solutions North America, LLC*

Wm. David Newman, Jr., Esq.
david.newman@marshallwatson.com
Law Offices of Marshall C. Watson. P.A.
1800 NW 49th Street, Suite 120
Fort Lauderdale, FL 33309
Telephone: 954-453-0365
Facsimile: 954-771-6052
*Attorney for Wells Fargo Bank*

Bruce Eric Bloch
sblawfirm@aol.com
Sapurstein & Bloch, P.A.
9700 South Dixie Highway, Suite 1000
Miami, Florida 33156
*Attorney for J P Morgan Chase Bank, N.A.*

Theodore Jon Leopold
tleopold@riccilaw.com
Ricci Leopold, P.A.
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
*Attorney for Mercantile Bank*

Robert M. Weinberger, Esq.
rmw@fcohenlaw.com
Cohen Norris Scherer Weinberger & Wolmer
712 U.S. Highway 1, Suite 400
North Palm Beach, FL 33408
*Attorney for Creditor Denise McCann*

Rosanne Brady, Esq.
Rosanne@macalusolaw.com
The Law Office of Peter N. Macaluso
3302 N. Tampa Street
Tampa, FL 33603
Telephone: 813-251-2831
Facsimile: 813-228-7004
*Attorney for Third Party Defendant/Cross Defendant Ronny Morillo*

John William Chapman, Jr.
jchapman@nhlslaw.com
Norton Hammersley Lopez & Skokos
1819 Main Street, Suite 610
Sarasota, FL 34236
*Attorney for Systems & Services Technologies*

Henry William Johnson
hjohnson@jzlawfirm.com

**Via U.S. Mail**

Willoughby Farr
DC # 653974
Avon Park Correctional Institution
P.O Box 1100
County Road 64 East
Avon Park, Florida 33826-1100
*Defendant & Cross-Claim Defendant, Pro Se*

David R. Chase, Receiver
David R. Chase, P.A.
Wachovia Center - Penthouse
1909 Tyler Street
Hollywood, FL 33020

Michael David McDonough, Esq.
12798 Forrest Hill Boulevard
Wellington, FL 33414
Telephone: 561-791-0590
*Attorney for Third Party Defendants German Miranda and Jesus Sandoval*

Mary Lou Farr
c/o James Stonehill
1006 Churchill Circle South
West Palm Beach, FL 33405
Telephone: 561-582-2876
*Defendant, Pro Se*

Jessy Mendoza
6117 Blue Grass Circle
Lake Worth, FL 33463
*Third Party Defendant*

Rosanne Brady, Esq.
Rosanne@macalusolaw.com
The Law Office of Peter N. Macaluso
3302 N. Tampa Street
Tampa, FL 33603
Telephone: 813-251-2831
Facsimile: 813-228-7004
*Attorney for Third Party Defendant Ronny Morillo*