UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  06-80180-CIV-RYSKAMP/VITUNAC

FEDERAL TRADE COMMISSION,

        Plaintiff,

v.

NATIONWIDE CONNECTIONS, INC.,
ACCESS ONE COMMUNICATIONS, INC.,
NETWORK ONE SERVICES, INC.,
WILLOUGHBY FARR,
MARY LOU FARR,
YARET GARCIA,
ERIKA RIABOUKHA,
QAADIR KAID,
BILLING CONCEPTS, INC.,
ACI BILLING SERVICES, INC., d/b/a OAN,
BSG CLEARING SOLUTIONS
NORTH AMERICA, LLC,
THE BILLING RESOURCE
d/b/a INTEGRETEL,

        Defendants.
_____/

<u>THIRD SUPPLEMENT OF DANNING, GILL, DIAMOND & KOLLITZ, LLP AND
APRIL 1, 2009 DECLARATION OF HOWARD KOLLITZ AS TO POST MARCH 19,
2009 ADDITIONAL VOLUNTARY REDUCTIONS BY DANNING, GILL, DIAMOND &
KOLLITZ, LLP TO REQUESTED COMPENSATION RE: APPLICATION OF
DANNING, GILL, DIAMOND &  KOLLITZ, LLP, AS SPECIAL BANKRUPTCY
COUNSEL IN CALIFORNIA TO THE RECEIVER, FOR ORDER APPROVING 2008
COMPENSATION ON FINAL BASIS AND CONFIRMING APPROVAL OF 2007
INTERIM COMPENSATION ON FINAL BASIS</u>

TO THE HONORABLE ANN E. VITUNAC, UNITED STATES MAGISTRATE JUDGE:

The Declaration of **HOWARD KOLLITZ** states:

### Background Of Post March 19, 2009 Additional Voluntary Reductions

1.      I am a lawyer and a member in good standing of, among other Bars, the State Bar of California, the Bar of the United States District Court for the Central District of California and the Bar of the United States District Court for the Northern District of California.  I have been practicing law on a continuous basis for approximately 35 years.  I have been authorized to appear in the United States District Court for the Southern District of Florida ("this Court") on behalf of Danning, Gill, Diamond & Kollitz, LLP ("DGD&K") on a pro hac vice basis in the above captioned civil action ("the Action") for the purpose of representing DGD&K as an applicant for professional compensation from the receivership estate created in the Action.

2.      I am the principal of a professional corporation which is a partner in DGD&K, and am authorized to make and execute this Declaration on behalf of DGD&K.

3.      I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would competently testify to such facts, except as to matters stated herein on information and belief and, as to those matters, I believe them to be true.  All dollar amounts and computations of time were provided to the undersigned by the Accounting/Billing Department of DGD&K for use in this Declaration.

4.      I have made and executed this Declaration in support of the pending Application Of Danning, Gill, Diamond & Kollitz, LLP , As Special Counsel In California To The Receiver,

For Order Approving 2008 Compensation On Final Basis And Confirming Approval Of 2007 Interim Compensation On Final Basis **[DE #822]** filed on November 11, 2008 ("the Pending Application").

5.      DGD&K was employed by David R. Chase, as the Receiver, in the Action ("the Receiver") in September of 2007 as the Receiver's special bankruptcy counsel in California to assist the Receiver in the enforcement of this Court's Omnibus Order **[DE #610]** entered on September 14, 2007 ("the Omnibus Order") and this Court's Order Granting Motion For Clarification As To Scope Of Stay **[DE #619]** entered on September 21, 2007 ("the Clarification Order").  By the Omnibus Order and the Clarification Order, this Court determined, among other things, that an entity known as The Billing Resource dba Integretel ("Integretel") was in possession of $1,762,762.56 ("the 1.8 Million") which was property of the Receivership Estate in the Action and which should be immediately delivered to the Receiver.  In response to the Omnibus Order of this Court, Integretel commenced a Bankruptcy Case under Chapter 11 of the Bankruptcy Code on September 16, 2007 ("the Bankruptcy Case") and refused to deliver to the Receiver the $1.8 Million, notwithstanding the Clarification Order **[DE #619]** of this Court which expressly iterated the directive that the $1.8 Million be delivered to the Receiver because this Court determined it to be property of the Receivership Estate prior to the commencement of the Bankruptcy Case.

6.      DGD&K filed its Application Of Danning, Gill, Diamond & Kollitz, LLP, As Special Bankruptcy Counsel, For Order Approving 2007 Interim Compensation ("the 2007 Application") on March 5, 2008 **[DE #772]**, after appropriate prior notice and opportunity to object was afforded to all parties entitled thereto including, among others, the Plaintiff in the

Action, the Federal Trade Commission ("the FTC").  No objections were filed in connection with the 2007 Application.  The monthly billing statements attached to the 2007 Application had been redacted to protect the attorney-client privilege of the Receiver, rights under the work product doctrine and other rights, given the then ongoing litigation between the Receiver and Integretel.[1] The 2007 Application stated, among other things, that unredacted copies of the billing statements would be filed with the Court if the Court so directed.  No one requested a review of copies of the unredacted monthly billing statements, attached to the 2007 Application in redacted form. **DGD&K voluntarily "no charged" 75.3 hours of billable time with a dollar value of $38,161.00 in the 2007 Application**.  By this Court's Order entered on March 7, 2007 **[DE #774]**, the 2007 Application was granted by this Court.  DGD&K has been paid the approved compensation of $412,224.11 by the Receiver in connection with legal services provided from September 17, 2007 through December 31, 2007, inclusive.


7.      DGD&K filed the Pending Application **[DE #822]** on November 11, 2008.  By Order of Reference entered on December 17, 2008**[DE #825]** the Pending Application was referred to The Honorable Ann E. Vitunac, United States Magistrate Judge, for hearing and issuance of a Report and Recommendation on the Pending Application as to the reasonableness of the requested fees.  The Order of Reference stated, among other things, that the fraud victims were simply unable to contest the reasonableness of the requested fees and, therefore, there was a

---

[1] The Receiver received from DGD&K, each and every month, the original fully unredacted monthly billing statement which was attached to the 2007 Application in redacted form.

need for a hearing before the Magistrate Judge.[2]  The Pending Application had attached to it

redacted versions of the detailed monthly billing statements which had been delivered to the

Receiver each and every month for the period of time from January 1, 2008 through September

30, 2008.[3]  The Pending Application (the 2008 Application) was filed on November 11, 2008

after appropriate prior notice and opportunity to object was afforded to the FTC and to all other

parties entitled thereto.  There were no objections to the Pending Application.  Neither the FTC

nor any other party requested a review of copies of the unredacted monthly billing statements[4]

**DGD&K voluntarily "no charged" an additional 97.3 of billable time with an additional**

**dollar value of $48,785 in the Pending Application,** and complied with the Receiver's request

that an additional $5,912 be "no charged" (as time associated with preparing the Pending

Application).[5]  On January 27, 2009 this Court entered its Order **[DE #829]** directing DGD&K to

file unredacted copies of its monthly billing statements with the Court on or before February 3,

---

[2] At the hearing on the Pending Application on March 19, 2009 DGD&K learned, for the first time, through the questioning of counsel to the FTC by the Magistrate Judge that there would be no distributions by the FTC to any fraud victim and that all of the moneys recovered by the Receiver and his professionals would be paid by the FTC to the Treasury of the United States.

[3] The Receiver received, each and every month, the original fully unredacted monthly billing statement, which was attached in redacted form to the Pending Application.

[4] As of the date of the filing of the Pending Application, on November 11, 2008, it was the understanding of DGD&K that the settlement among the FTC, the Receiver and Integretel had not been fully consummated and that issues remained unresolved, particularly with respect to Integretel's sale of all operating assets.  Accordingly, redacted monthly billing statements were attached to the Pending Application which recited, among other things, that unredacted copies would be filed by DGD&K if directed by the Court.

[5] DGD&K, in representing trustees in bankruptcy and receivers in equity receiverships customarily requests compensation for the preparation of fee applications.  See, for example, the First Supplement of Danning, Gill, Diamond & Kollitz, LLP, etc., filed on March 26, 2009 **[DE #842/pp. 25-26]**.  This Court is asked to take judicial notice of the facts set forth in DGD&K's application for compensation in the Century City Doctors Hospital Bankruptcy Case in the Central District of California.

2009.  On January 30, 2009 DGD&K served and filed with this Court copies of the fully

unredacted billing statements **[DE #830].**[6]  On and after January 30, 2009, the FTC, any party to

the Action, and any member of the public had the ability to review copies of the fully unredacted

monthly billing statements of DGD&K, the originals of which were, and are, in the possession of

the Receiver.  By January 30, 2009, a final and complete settlement among the Receiver, the

FTC and Integretel had been approved by the Bankruptcy Court (before which Integretel's

Bankruptcy Case was pending), by the FTC (commission approval) and by this Court, as well as

consummated.


8.        Pursuant to the Order of Reference **[DE #825],** this Court convened a hearing on

March 19, 2009 at 10:00 a.m.   On March 19, 2009 and prior to the hearing, DGD&K was

advised, for the first time at approximately 8:30 a.m., that the FTC had "questions" about the

Pending Application.  On March 19, 2009 and prior to the hearing, the undersigned, on behalf of

DGD&K, had a meeting with counsel to the FTC.  The undersigned advised counsel to the FTC

that a number of line items "questioned" by the FTC could be billing errors and that the

undersigned would so advise this Court as to each identified entry during the March 19, 2009

hearing.[7]

---

[6] Notice Of Filing Of Unredacted Copies Of Monthly Billing Statements Re: Application Of Danning, Gill, Diamond & Kollitz, LLP, As Special Bankruptcy Counsel In California To the Receiver, For Order Approving 2008 Compensation On Final Basis And Confirming Approval Of 2007 Interim Compensation On Final Basis **[DE #830]** filed on January 30, 2009 ("the Unredacted Statements")

[7] A few days prior to the March 19, 2009 hearing general counsel to the Receiver advised DGD&K that there were four (4) time entries on Page 361 of the Unredacted Statements, totaling 2.3 hours, which should have been "no charged" and the undersigned advised general counsel that he would so advise this Court during the hearing on March 19, 2009.

9.      During the hearing on March 19, 2009, the undersigned offered to advise this Court orally on the record concerning the list of specific charges which would either be "no charged" or which had been "questioned" by the FTC. This Court, during the March 19, 2009 hearing, instructed counsel that it wanted a formal supplemental submission of adjustments (voluntary deductions) proposed by DGD&K to the Pending Application as well as other supplemental submissions which addressed questions and issues raised by this Court. This Court directed that all such supplemental submissions should be made to this Court on or before April 2, 2009.

10.     On March 26, 2009, the FTC transmitted to DGD&K a "draft" for the FTC's "comments" and "questions" on the Pending Application. This Declaration will address those "questions" and "comments" as well as identify adjustments (additional voluntary deductions) which DGD&K believes are reasonable.[8]

## Preliminary Comments On Requested Compensation

11.     At the outset of an analysis of the Pending Application, DGD&K requests this Court to consider the benefits derived from the efforts of DGD&K:

---

[8] DGD&K understands that the FTC's March 26, 2009 draft in no way binds the FTC concerning what it may ultimately determine to file for purposes of the FTC's compliance with this Court's Order set forth in its April 3, 2007 Report and Recommendation [DE #443] and this Court's Order entered on March 11, 2009 [DE #839] denying the FTC's Request to appear at the March 19, 2009 hearing by telephone and iterating its Order that the FTC must file a written response stating its position regarding professional compensation. At the time of the March 19, 2009 hearing, the FTC had not filed any papers in connection with the Pending Application.

(a)     DGD&K preserved the integrity of this Court's Omnibus Order **[DE #610]** and Clarification Order **[DE #619]** in the Bankruptcy Case for Integretel by the <u>creation</u> of a blocked interest bearing account in the amount of $1,762,762.56 from the general funds of Integretel ("the $1.8 Million") and successfully defeated ongoing attempts by Integretel over more than 8 months to "unblock" the $1.8 Million and spend the money;

(b)     From the outset of its employment by the Receiver in September of 2007, Integretel was unwilling to negotiate any settlement with the Receiver which did not include the FTC. For its part, the FTC wanted Integretel, which the FTC considered, in effect, a 'repeat offender', to go out of business. DGD&K assisted the Receiver in negotiating and consummating a settlement among Integretel, the FTC and the Receiver whereby, among other things, Integretel has gone out of business through a Bankruptcy Court approved sale of its operating assets;.

(c)     DGD&K assisted the Receiver, in the context of the three way settlement, in obtaining an allowed  (approved) claim in the Bankruptcy Case for $1,762,762.56 and the Receiver's receipt of $650,000 in cash, to date, as a "guaranteed minimum" distribution on account of such allowed $1,762,762.56 claim; and,

(d)     While DGD&K created the segregated account holding the $1.8 Million and preserved it, DGD&K, as lawyers, do not make decisions to settle on any particular terms. DGD&K does believe that the Receiver obtained a good settlement which belief was, in effect, confirmed by approval of the settlement by the Bankruptcy Court, the FTC (Commission) and this Court.

12.     DGD&K also requests that, at the outset of an analysis of the Pending Application, this Court consider that there has <u>never</u> been an objection by anyone to the hourly billing rates charged by DGD&K,[9] that there has never been any question raised by anyone as to the quality of the legal services which were provided to the Receiver by DGD&K,[10] and that no one ever filed an objection to the 2007 Application or to the Pending Application.[11]  Moreover, the FTC's "questions" and "comments" in late March of 2009 about line item entries in 2007 and 2008 have caused DGD&K to expend considerable time and expense in reviewing and researching information, which time and expense could have been avoided if the FTC had complied with this Court's standing Order in its April 3, 2007 Report and Recommendation [DE #443] or simply requested that the Unredacted Statements be filed under seal or reviewed in camera.  After a lengthy and thorough discussion on March 30, 2009 between DGD&K and counsel to the FTC concerning the March 26, 2009 draft of the FTC's proposed response to the Pending Application, DGD&K submits the following month by month comments on time entries now characterized as "questionable" by the FTC:

---

[9] DGD&K, in the Pending Application [DE #822/pp. 10-12], the 2007 Application [DE #772, pp. 8-10], and the First Supplement of Danning, Gill, Diamond & Kollitz, LLP, etc. [DE #842/pp. 8-107], has provided evidence that it is seeking payment of its regular hourly rates charged to clients and that its hourly rates, were, and are, <u>lower</u> than the hourly rates of other bankruptcy lawyers located in the relevant geographical area, at comparable experience levels, who were also involved in the Integretel Bankruptcy Case.

[10] On numerous occasions, the Receiver and his general counsel, Tew Cardenas, LLP, had each opined that DGD&K had done a "great" job in representing the Receiver.

[11] The FTC has asserted that it really could not review the Pending Application or the 2007 Application until it had the Unredacted Statements [DE #830], that it relied upon the Receiver reviewing the unredacted monthly billing statements of DGD&K, and, in any event, that DGD&K was employed by the Receiver and not by the FTC.

<u>September of 2007 Professional Fees</u>[12]

13.     DGD&K charged <u>**$81,254**</u> in fees and voluntarily "no charged" <u>**$7,222.50**</u> in fees for services in September of 2007.  The FTC has now characterized <u>**$3,538.50**</u> in fees as being "questionable", that is, involving "duplication" by reason of such <u>$3,538.50</u> being attributable to communications between or among two or three professionals at DGD&K.  During September 2007, among other things, DGD&K was employed on an emergency basis to prevent Integretel from ignoring the Orders of this Court and spending the $1.8 Million.  On September 19, 2007 Integretel commenced an adversary proceeding against the Receiver and the FTC in the Bankruptcy Case and DGD&K was also responsible for the Receiver's defense.[13]  DGD&K believes that its pre March 19, 2009 voluntary reduction of $7,222.50 should not be increased and that the $81,254 in fees are reasonable fees.  DGD&K denies the FTC's allegation of "duplication".

<u>October of 2007 Professional Fees</u>

14.     DGD&K charged <u>**$138,151.50**</u> in fees and voluntarily "no charged" <u>**$14,910**</u> in fees for services in October of 2007.  The FTC has now characterized <u>**$4,183.50**</u> in fees as being "questionable", that is, involving "duplication" by reason of such $4,183.50 being attributable to

---

[12] All of the summaries set forth, on a month to month basis, are made subject to the statements hereinafter made concerning post March 19, 2009 additional voluntary reductions.

[13] Each and all of the monthly summaries of services rendered as set forth herein are subject to the detailed descriptions set forth in the 2007 Application **[DE #772]**, in the Pending Application **[DE #822]** and in the Unredacted Statements. **[DE #830]**

communications between or among two or three professionals at DGD&K.  During October of 2007 DGD&K continued to prevent Integretel from spending the $1.8 Million, having succeeded in creating an interest bearing "blocked account" with $1,762,762.56 taken from Integretel's general operating account and placed in the blocked account.  DGD&K believes that its pre March 19, 2009 voluntary reduction of $14,910 should not be increased and that the $138,151.50 in fees are reasonable fees.  DGD&K denies the FTC's allegation of "duplication".

## November of 2007 Professional Fees

15.     DGD&K charged **$102,702** in fees and voluntarily "no charged" **$14,543.50** in fees for services in November of 2007.  The FTC has now characterized **$5,668** in fees as being "questionable", that is, involving "duplication" by reason of communications between or among two or three professionals at DGD&K.  During November of 2007, DGD&K was required to spend time defending the Receiver against ongoing efforts by Integretel to not only spend the $1.8 Million but, in addition, to obtain injunctive relief against the Receiver.  DGD&K believes its pre March 19, 2009 voluntary reduction of $14,543.50 should not be increased and that the $102,702 in fees are reasonable fees.  DGD&K denies the FTC's allegation of "duplication".

## December of 2007 Professional Fees

16.     DGD&K charged **$66,600.50** in fees and voluntarily "no charged" **$1,485** in fees for services in December of 2007.  The FTC has now characterized **$4,231.50** as being "questionable", that is, involving "duplication" by reason of communications between or among two or three professionals at DGD&K.  During December of 2007, DGD&K was required to

spend time defending the Receiver against Integretel's ongoing efforts to spend the $1.8 Million

and, in addition, pursue an appeal from the Order of the Bankruptcy Court to the United States

District Court for the Northern District of California which Order, among other things, provided

that the Bankruptcy Court had exclusive jurisdiction, and that this Court lacked jurisdiction, to

determine the ownership of the $1.8 Million. DGD&K believes that its pre March 19, 2009

voluntary reduction of $1,485 should not be increased and that the $66,600.50 in fees are

reasonable fees. DGD&K denies the FTC's allegation of "duplication".

### January of 2008 Professional Fees

17.    DGD&K charged **$63,323** in fees and voluntarily "no charged" **$3,390** in fees for

services in January of 2008. The FTC has characterized **$3,510** in fees as being "questionable",

that is, involving "duplication" by reason of such $3,510 being attributable to communications

between or among two or three professionals at DGD&K. During January of 2008, DGD&K

was obliged to defend the Receiver's interests in California in both the Bankruptcy Court,

wherein Integretel continued its efforts to try to spend the $1.8 Million, and in the District Court

(Northern District of California) on appeal of the injunction which Integretel obtained against the

Receiver purporting to prevent the Receiver from enforcing Orders of this Court. DGD&K

believes that its pre March 19, 2009 voluntary reduction of $3,390 should not be increased and

that the $63,323 in fees are reasonable fees. DGD&K denies the FTC's allegation of

"duplication".

## February of 2008 Professional Fees

18.        DGD&K charged **$46,986.50** in fees and voluntarily "no charged" **$16,481.50** in fees for services in February of 2008.  The FTC has characterized **$2,620** in fees as being "questionable", that is, involving "duplication" by reason of such $2,620 being attributable to communications between or among two or three professionals at DGD&K.  During February of 2008, Integretel continued to pursue its efforts to "unblock" the blocked account with the $1.8 Million in order to spend that money and DGD&K was obliged to continue to pursue the Receiver's appeal in the District Court.  DGD&K believes that its pre March 19, 2009 voluntary reduction of $16,481.50 should not be increased and that the $46,986.50 in fees are reasonable fees.  DGD&K denies the FTC's allegation of "duplication".

## March of 2008 Professional Fees

19.        DGD&K charged **$66,335.50** in fees and voluntarily "no charged" **$5,025.50** in fees for services in March of 2008.  The FTC has characterized **$1,336** in fees as being "questionable", that is, involving "duplication" by reason of such $1,336 being attributable to communications between or among two or three professionals at DGD&K.  During March of 2008, DGD&K continued to pursue the Receiver's appeal in the District Court from the injunction entered by the Bankruptcy Court against the Receiver as well as Integretel's ongoing efforts to spend the $1.8 Million.  DGD&K believes that its pre March 19, 2009 voluntary reduction of $5,025.50 should not be increased and that the $66,335.50 in fees are reasonable fees.  DGD&K denies the FTC's allegation of "duplication".

**April of 2008 Professional Fees**

20.      DGD&K charged **$69,219** in fees and voluntarily "no charged" **$1,682** in fees for services in April of 2008.  The FTC has characterized **$940** in fees as being "questionable", that is, involving "duplication" by reason of such $940 being attributable to communications between or among two or three professionals at DGD&K.  During April of 2008, DGD&K assembled the Receiver's record on appeal to the District Court and finalized the Receiver's opening brief on appeal as well as continued to defend against the ongoing efforts of Integretel to spend the $1.8 Million.  DGD&K believes that its pre March 19, 2009 voluntary reduction of $1,682 should not be increased and that the $69,219 in fees are reasonable fees.  DGD&K denies the FTC's allegation of "duplication".

**May of 2008 Professional Fees**

21.      DGD&K charged **$27,116** in fees and voluntarily "no charged" **$1,032** in fees for services in May of 2008.  The FTC has characterized **$569** in fees as being "questionable", that is, involving "duplication" by reason of such $569 being attributable to communications between or among two or three professionals at DGD&K.  During May of 2008, DGD&K assisted the Receiver in reaching a settlement of all disputes as between the Receiver and the FTC, on the one hand, and Integretel, on the other hand, subject to the approval of the Bankruptcy Court, the FTC (Commission approval) and this Court.  DGD&K also expended time in preserving the Receiver's rights to the $1.8 Million and his rights on the pending appeal in the District Court, while awaiting the requisite approvals.  DGD&K believes that its pre March 19, 2009 voluntary

reduction of $1,032 should not be increased and that the $27,116 in fees are reasonable fees. DGD&K denies the FTC's allegation of "duplication".

## June of 2008 Professional Fees

22.     DGD&K charged **$4,870.50** in fees and voluntarily "no charged" **$452** in fees for services in June of 2008. The FTC has not "questioned" any of DGD&K fees for June of 2008. During June of 2008, DGD&K was responsible for maintaining the status quo with respect to the Receiver's pending appeal to the District Court, the status quo with respect to the $1.8 Million and doing what it could do to make certain that Integretel was proceeding with the sale of its operating assets. DGD&K believes that its pre March 19, 2009 voluntary reduction of $452 should not be increased and that the $4,870.50 in fees are reasonable fees.

## July of 2008 Professional Fees

23.     DGD&K charged **$13,678** in fees and voluntarily "no charged" **$716.50** in fees for services in July of 2008. The FTC has characterized **$395.50** in fees as being "questionable", that is, involving "duplication" by reason of such $395.50 being attributable to communications between or among two or three professionals at DGD&K. During July of 2008, DGD&K assisted the Receiver in documenting the settlement among the FTC, the Receiver and Integretel as well as preserving the Receiver's rights with respect to the $1.8 Million and on the District Court appeal. DGD&K believes that its pre March 19, 2009 voluntary reduction of $716.50 should not be increased and that $13,678 in fees are reasonable fees. DGD&K denies the FTC's allegations of "duplication".

## August of 2008 Professional Fees

24.     DGD&K charged **$13,797.50** in fees and voluntarily "no charged" **$14,691** in fees for services in August of 2008. The FTC has not "questioned" any of DGD&K's fees for August of 2008. During August of 2008, DGD&K was responsible for maintaining the status quo with regard to the $1.8 Million and on the pending District Court appeal as well as reviewing settlement documentation and comments on settlement documentation. DGD&K believes that its pre March 19, 2009 voluntary reduction of $14,691 should not be increased and the $13,797.50 in fees are reasonable fees.

## September of 2008 Professional Fees

25.     DGD&K charged **$8,395.50** in fees and voluntarily "no charged" **$5,367** in fees for services in September of 2008. The FTC has not "questioned" any of DGD&K's fees for September of 2008. During September of 2008, DGD&K assisted the Receiver in dealing with problems which had developed with respect to the three party settlement (problems with Integretel closing the sale of all of its operating assets) as well as preserving the Receiver's rights on the District Court appeal and in the Bankruptcy Court with regard to the $1.8 Million. DGD&K believes that its pre March 19, 2009 voluntary reduction of $5,367 should not be increased and that the $8,395.50 in fees are reasonable fees.

<u>**POST MARCH 19, 2009 ADDITIONAL VOLUNTARY REDUCTIONS TO**</u>

<u>**COMPENSATION REQUESTED BY DGD&K**</u>

<u>**Fee Application Preparation**</u>

26.     As previously noted, it has been the practice and custom of DGD&K to seek and obtain compensation associated with fee application preparation in bankruptcy cases and in other receivership cases.  To the best of the recollection of the undersigned, DGD&K was not asked by the Receiver to "no charge" all time associated with the preparation of fee applications until some date in 2008 before the filing of the Pending Application.  DGD&K has agreed to the Receiver's request.  The undersigned undertook to cause DGD&K's Accounting/Billing Department to generate a computerized list of all time entries from September of 2007 through September of 2008 which would capture all such time which had not been previously "no charged".  Attached hereto as Exhibit "22"[14] and, by this reference, incorporated herein is a copy of a computerized list of time entries dealing with fees [both as to the 2007 Application (**DE** #772) and the Pending Application (**DE #822**)] indicating total additional time with a value of **$9,678** plus the **$1,261** in fees on September 5 and 6, 2008 which were identified by the Receiver's general counsel for a total of **$10,939**, which DGD&K will deduct from its request for compensation.

---

[14] The Pending Application [**DE #822**] has 14 Exhibits attached to it and the First Supplement [**DE #842**] filed on March 26, 2009 has Exhibits "15" through "21", inclusive, attached to it. Therefore, the first exhibit to this Declaration is designated as Exhibit "22".

## Time Involving "Calendaring" In Description

27.      During the hearing on March 19, 2009, this Court questioned time entries for "calendaring". While DGD&K did not, to the best of the knowledge of the undersigned, charge time which involved nothing more than completing a calendar card, the undersigned directed the Accounting/Billing Department of DGD&K to generate a computerized list of all time entries which might even arguably involve time dealing with calendaring which had not been previously "no charged". Attached hereto as Exhibit "23" and, by this reference, incorporated herein is that computerized list of time entries which have a dollar value of **$5,974** (for the period of time from September 2007 through September 2008) and which DGD&K will deduct from its request for compensation.

## Facsimile Costs

28.      To the best of the recollection of the undersigned, the Receiver's request that DGD&K "no charge" all facsimile costs was made in 2008 before the Pending Application [**DE #822**] was filed on November 11, 2008. It is the custom and practice of DGD&K in bankruptcy cases and in other receivership cases to seek and obtain payment of facsimile charges. Nevertheless, DGD&K agreed to the Receiver's request. The undersigned requested the Accounting/Billing Department of DGD&K to generate a computerized list of all facsimile charges which had not been previously "no charged". Attached hereto as Exhibit "24" and, by this reference, incorporated herein is that computerized list which reflects a dollar value of **$1,455.20** (for the period of time from September of 2007 through September 2008) and which DGD&K will deduct from its request for compensation.

## Other Post March 19, 2009 "Comments" Of the FTC

## On the Pending Application

29.     The FTC has "commented" on certain travel expenses of Walter K. Oetzell in September of 2007[15] and with respect to an April 30, 2008 to May 2, 2008 trip to Washington, D.C. to attend the settlement conference at the FTC.  Mr. Oetzell will submit his separate Declaration as the Fourth Supplement to the Pending Application which will explain, in detail, why all of the expense reimbursements in question should be approved.

30.     The FTC has "commented" upon 22 separate time entries with a total dollar value of $3,918 involving what the FTC characterized as time spent reviewing the status of Orders, dockets and rules.  DGD&K takes the position that such charges are proper and reasonable in amount.

31.     .The FTC has also "commented" on 5 specific time entries as appearing to be "duplicate charges" or "over billing".  Based exclusively on consideration of the amount of time which would be required in March of 2009 to research and further explain the time entries in question, DGD&K will deduct **$220** for an alleged "duplicate" time entry identified by the FTC plus **$508.50** for 0.9 hours of time which the FTC characterized as "very long" for a total of **$728.50**.

---

[15] It should be noted again that DGD&K did not seek compensation for travel time between Los Angeles, California (where its offices are located) and San Jose, California (where the Bankruptcy Court and the District Court convened hearings) in connection with the Integretel Bankruptcy Case.

**POST MARCH 19, 2009 RECALCULATION OF DGD&K'S REQUEST FOR**

**COMPENSATION**

32.      Attached hereto as Exhibit "25" and, by this reference, incorporated herein is a copy of the DGD&K firm resume. DGD&K is a law firm with an excellent reputation, earned over the course of more than 50 years, for both competency and integrity. DGD&K staffed this engagement by the Receiver, in terms of personnel assigned to work on the engagement, no differently than it would have for any other client of DGD&K who was experiencing similar problems. DGD&K requests this Court to consider the fact that, prior to the March 19, 2009 hearing, DGD&K had **voluntarily** elected not to charge for more than **172.6** hours of billable time from September 2007 through September 2008, with a dollar value of more than **$86,946**.

33.      DGD&K hereby proposed to recalculate its request for compensation as follows, assuming that this Court recommends the final approval of the $412,224.11 heretofore approved by this Court's Order of March 7, 2008 **[DE #774]**, and paid for the period prior to January 1, 2008, with any and all adjustments related to 2007 compensation be made to the balance of compensation requested for 2008 services:

**2008 Fees**

|      |              |                                            |
|------|--------------|--------------------------------------------|
|      | $307,859.00  | (original request for 2008 fees)           |
| less | - 10,939.00  | (fee application work)                      |
|      | $296,920.00  |                                            |
| less | - 5,974.00   | (calendaring descriptions)                 |
|      | $290,946.00  |                                            |
| less | - 728.50     | (miscellaneous March 26, 2009 "comments" of FTC) |
|      | $290,217.50  | (reduced 2008 fee request)                 |

**2008 Expenses**

| | $17,235.93 | (original request for expenses) |
|---|---|---|
| less | - 1,455.20 | (facsimile charges) |
| | $15,780.73 | in expenses |

**BASED UPON THE FOREGOING CONSIDERATIONS, THE TOTAL OF FEES AND EXPENSES REQUESTED BY DGD&K FOR 2008 WORK (IN ADDITION TO THE $412,224.11 PAID FOR 2007 WORK) IS $305,998.23 ($290,217.50 IN FEES PLUS $15,780.73 IN EXPENSES).**

The undersigned declares, under penalty of perjury and subject to the laws of the United States, that the foregoing statements are true and correct to the best of the knowledge, information and belief of the undersigned.

Executed, at Los Angeles, California, on this 1st day of April, 2009.

Howard Kollitz [pro hac vice] for Applicant,

**DANNING, GILL, DIAMOND & KOLLITZ, LLP**
2029 Century Park East, Third Floor
Los Angeles, California 90067

Telephone: 310.277.0077
Facsimile: 310.277.5735
Email: HKollitz@dgdk.com

Dated: April 1ˢᵗ, 2009.

Respectfully submitted,

**TEW CARDENAS LLP**
Counsel for David R. Chase, Receiver
Four Seasons Tower, 15ᵗʰ Floor
1441 Brickell Avenue
Miami, Florida 33131
Telephone: 305.536.1112
Facsimile:  305.536.1116

By: s:/Jeffrey C. Schneider
      **JEFFREY C. SCHNEIDER, P.A.**
      Florida Bar No. 933244
      E-mail:  jcs@tewlaw.com

      and

**DANNING, GILL, DIAMOND & KOLLITZ, LLP**
Special Bankruptcy Counsel to the Receiver
2029 Century Park East, Third Floor
Los Angeles, California 90067
Telephone: 310.277.0077
Facsimile: 310.277.5735
E-mail: HKollitz@dgdk.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 1st, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: s:/Jeffrey C. Schneider
JEFFREY C. SCHNEIDER, P.A.

*FTC v. NCI, et al*
Case No.  06-80180-CIV-RYSKAMP

**SERVICE LIST**

**David R. Chase, Receiver**
David R. Chase, Receiver
1700 East Las Olas Boulevard
Penthouse 2
Fort Lauderdale, Florida 33301
Telephone:  954.920.7779
david@davidchaselaw.com

**Laura Kim, Esquire**
**Michael Davis, Esquire**
**Collot Guerard, Esquire**
**Richard McKewen, Esq.**
Federal Trade Commission
600 Pennsylvania Avenue NW
Room H-238
Washington, DC 20580
Telephone: 202.326.3734
Facsimile:  202.326.3395
lkim@ftc.gov
mdavis@ftc.gov
cguerard@ftc.gov
rmckewen@ftc.gov

**Robert Carey, Deputy Receiver**
199 East Flagler Street
Suite 100
Miami, Florida 33131
Telephone:  305.666.4663
careyrg@comcast.net

**Mark D. Johnson, Esquire**
*Counsel for Defendants Qaadir Kaid, Yaret*
*Garcia, and Erika Riaboukha*
Mark D. Johnson, P.A.
10 Central Parkway
Suite 210
Stuart, Florida 34994
Telephone: 772.223.7700
Facsimile: 772.223.1177
markdjohnson@bellsouth.net

**Robert M. Weinberger, Esquire**
Cohen, Norris, Scherer, Weinberger & Wolmer
*Counsel for Creditor Denise McCann*
712 U.S. Highway 1
Suite 400
North Palm Beach, Florida 33408
Telephone: 561.844.3600
Facsimile:  561.842.4104
rmw@fcohenlaw.com

**Steven E. Siff, Esquire**
*Counsel for BSG Clearing Solutions, North*
*America, LLC, ACI Billing Services, Inc.,*
*d/b/a OAN and Billing Concepts, Inc.*
McDermott Will & Emery, LLP
2200 Miami Center
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305.358.3500
Facsimile:  305.347.6500
ssiff@mwe.com
maustin@mwe.com

**Thomas G. Long, Esquire**
**Hildegund P. Wanders, Esquire**
Barnett Bolt Kirkwood Long & McBride
*Counsel for BMW Financial Services NA,LLC*
601 Bayshore Boulevard
Suite 700
Tampa, Florida 33606
Telephone: 813.253.2020
Facsimile: 813.251.6711
tlong@barnettbolt.com
hwanders@barnettbolt.com

**Henry W. Johnson, Esquire**
*Counsel for John J. Smith*
Johnson, Zippay & Walters, P.A
1401 North University Drive, Suite 301
Coral Springs, Florida 33701
Telephone: 954.755.9880
Facsimile: 954.755.9899
*Via U.S. Mail*

**Richard Gordin, Esquire**
**Steven A. Lancellotta, Esquire**
Tighe Patton Armstrong Teasdale, PLLC
*Counsel for The Billing Resource d/b/a*
*Integretel*
1747 Pennsylvania Avenue, N.W.
Third Floor
Washington, D.C. 20006-4604
Telephone: 202.565.2881
Facsimile: 202.454.2805
rgordin@tighepatton.com
slancellotta@tighepatton.com
ngoldfarb@tighepatton.com

**Michael Woodbury, Esquire**
*Counsel for Grunspan Trust, et al*
Woodbury & Santiago, P.A.
Two Datran Center - Penthouse 1A
9130 South Dadeland Boulevard
Miami, Florida 33156
Telephone: 305.669.9570
Facsimile: 305.669.8616
michael.woodbury@woodbury-
santiago.com

**Jeffrey C. Schneider, Esquire**
*Counsel for David R. Chase, Receiver*
Tew Cardenas LLP
Four Seasons Tower, 15th Floor
1441 Brickell Avenue
Miami, Florida 33131
Telephone: 305.536.1112
Facsimile: 305.536.1116
jcs@tewlaw.com

**Martin J. Alexander, Esquire**
**Scott B. Newman, Esquire**
*Counsel for The Billing Resource d/b/a*
*Integretel*
Holland & Knight LLP
222 Lakeview Avenue, Suite 1000
West Palm Beach, Florida 33401
Telephone: 561.650.8036
Facsimile: 561.650.8399
marty.alexander@hklaw.com
scott.newman@hklaw.com

**Andrew G. Berg, Esquire**
*Counsel for BSG Clearing Solutions, North
America, LLC, ACI Billing Services, Inc., d/b/a
OAN and Billing Concepts, Inc.*
Sonnenschein Nath & Rosenthal LLP
1301 K Street, N.W. , Suite 600 East Tower
Washington, DC 20005-3364
Telephone: 202.408.5546
Facsimile: 202.408.6399
aberg@sonnenschein.com

**Willoughby Farr**
*Pro Se Defendant*
Inmate Number 653974
AVON PARK CORRECTIONAL
INSTITUTION
WORK CAMP
P.O. BOX 1100
County Road 64 East
Avon Park, Florida 33826-1100
*(Via U.S. Mail)*

**Lindsey M. Diehl, Esq.**
Foreclosure Attorney
Florida Default Law Group, LP
9119 Corporate Lake Drive, Suite 300
Tampa, FL 33634
ldiehl@defaultlawfl.com

**Phillip M. Hudson III, Esquire**
**Hilda Piloto, Esquire**
*Counsel for Eastern Savings Bank, FSB*
Arnstein & Lehr LLP
200 South Biscayne Blvd., Suite 3600
Miami, Florida 33131
Telephone: 305.374.3330
Facsimile: 305.374.4744
pmhudson@arnstein.com
hpiloto@arnstein.com

**Mary Lou Farr**
*Pro Se Defendant*
1006 Churchill Circle South
West Palm Beach, Florida 33405
Telephone: 561.582.2876
*(Via U.S. Mail)*